UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CH HOLDING COMPANY, ALAN
ACKERMAN, and CH/BRAND PARKING
ASSOCIATES,

                Plaintiffs,                Case Number 12-10629
                                            Honorable David M. Lawson

v.

MILLER PARKING COMPANY, NATHAN
L. MILLER TRUST, ALLISON J. MILLER
TRUST, DAVID M. MILLER TRUST, AMY
M. WEINSTEIN, EMILY WEINSTEIN,
BENJAMIN WEINSTEIN, MATTHEW
STEIN, ANDREW STEIN, JANET STEIN,
MILLER PARKING SERVICES, LLC, JAMES
N. MILLER, and JAMES N. MILLER
REVOCABLE TRUST, U/T/A dated 11/19/98,

                Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFFS' AMENDED MOTION TO REMAND

        The plaintiffs sued the defendants in the Oakland County, Michigan circuit court alleging

that the defendants are either the *alter egos* or fraudulent transferees of assets of persons and entities

against which the plaintiffs have a substantial money judgment. The defendants in this case

removed it to this Court under 28 U.S.C. § 1334(b) on the ground that the lawsuit relates to a

pending bankruptcy filed by one of the plaintiffs' judgment debtors. Now before the Court is a

motion by the plaintiffs to remand the case. The plaintiffs contend alternatively that this Court lacks

subject matter jurisdiction, or that the Court must or ought to abstain and defer to the state court.

The defendants have filed a response, and the plaintiffs replied. The Court has reviewed the

pleadings and motion papers and finds that the papers adequately set forth the relevant facts and law

and oral argument will not aid in the disposition of the motion.  Therefore, it is **ORDERED** that the motion be decided on the papers submitted.  *See* E.D. Mich. LR 7.1(f)(2).  The hearing previously scheduled for November 14, 2012 is **CANCELLED**.

For the reasons explained below, the Court finds that the present lawsuit relates to the pending bankruptcy of Miller Parking Company, LLC, because the plaintiffs seek to recover the same funds sought in a separate case by the bankruptcy trustee.  The case is not subject to mandatory abstention under 28 U.S.C. § 1334(c)(2), and the proper exercise of discretion would not lead to permissive abstention.  Therefore, the motion to remand will be denied.

## I.

The object of this lawsuit is to pierce corporate veils and set aside fraudulent transfers in order to permit the plaintiffs to collect on a $3 million judgment obtained in state court.  One of the judgment debtors is Miller Parking Company, LLC, which is sometimes referred to as Miller Parking Detroit.  That entity filed bankruptcy.  Also pending before this Court is a case involving the same facts and parties, *Lim v. Miller Parking*, docket no.11-14422, in which the bankruptcy trustee is seeking to reach the same assets as the present plaintiffs.

The series of events fomenting both cases began in 2004 when plaintiff Alan Ackerman and his companies sued Bruce Miller and his companies over a business dispute.  Ackerman is the lead plaintiff in the present action.  He is a minority shareholder in plaintiff CH Holding (which owns three-quarters of plaintiff CH/Brand), and a former business partner of Bruce Miller, who owned the now bankrupt Miller Parking Company, LLC (Miller Parking Detroit).  Bruce Miller's son, James Miller, owns defendant Miller Parking Services, LLC, which occupies and operates a parking lot at 326 E. Lafayette Street in Detroit.  Miller Parking Services, LLC (MPS) allegedly acquired

the assets of the bankrupt Miller Parking Detroit. Plaintiff CH Holding owns the Lafayette Street lot. James Miller also was the sole director of Miller Parking Company (Miller Parking Chicago), another Miller family parking business that operated in Chicago. The Weinstein and Stein defendants are Bruce Miller's children and grandchildren, who together with James Miller's personal and family trusts owned all of the shares in Miller Parking Chicago.

Ackerman initiated the 2004 state court lawsuit following a breakdown in a prior business relationship between CH Holding and Miller Parking Detroit. In February 2009, while the Oakland County case was pending, an unaffiliated entity that held a long-term lease on Miller Parking Chicago's major capital asset, the Bismark parking deck in Chicago, exercised its option to buy the deck. That left Miller Parking Chicago with no ongoing operations or major assets other than cash from the sale. On June 30, 2009, Ackerman won a judgment in the Oakland County case for around $3 million. In September 2009, James Miller distributed $7 million in cash held by Miller Parking Chicago to its shareholders (who include the defendants in the present case). Not long after, James dissolved the Chicago company. On October 7, 2009, Miller Parking Detroit filed for bankruptcy.

Two years later, on October 7, 2011, the bankruptcy trustee for Miller Parking Detroit, K. Jin Lim, sued James Miller, Miller Parking Chicago, and its former shareholders, naming all of the same defendants that Ackerman named in the present action, except MPS. The trustee alleges that James and Bruce Miller comingled the affairs of their two companies and carried out a fraudulent scheme to funnel assets from Miller Parking Detroit to Miller Parking Chicago, in order to evade creditor claims against Miller Parking Detroit. The trustee's suit asserts claims for: (1) preference to recover "loan payments" made by the Detroit company to the Chicago company on a fake promissory note; (2) fraudulent transfers based on other unidentified inter-company payments; (3)

-3-

fraudulent transfers for any payments made by the Detroit company to any defendant; (4) disgorgement; (5) substantive consolidation; (6) alter ego; and (7) breach of fiduciary duty by James Miller.

On January 19, 2012, Ackerman filed the complaint in the present action in Oakland County, Michigan circuit court.  Two of the Weinstein defendants filed their notice of removal on February 13, 2012, in which all of the defendants eventually joined.

Ackerman's claims fall into three categories: (1) Counts I - VII, X, and XI, against James Miller, Miller Parking Chicago, and the shareholders of Miller Parking Chicago, assert various theories including *alter ego*, fraudulent transfer, and unjust enrichment based on alleged comingling and transfers of assets from Miller Parking Detroit to Miller Parking Chicago; (2) Counts VIII and IX, against James Miller, allege conversion of parking revenues from the Lafayette Street parking lot, prior to December 2009; and (3) Counts XII - XIV, against James Miller and MPS, allege conversion, trespass, and injunctive relief relating to operation of the lot and the alleged refusal by MPS to surrender the lot after Ackerman terminated the agreement.

The current claims against MPS do not have any apparent relation to the fraudulent transfers or the earlier recovery by CH Holding and Ackerman against Miller Parking Detroit.  As mentioned above, MPS acquired the remaining assets of Miller Parking Detroit after the bankruptcy, and Ackerman now alleges that the new company has continued to occupy and operate the Lafayette Street lot despite the fact that in late 2011, CH Holding terminated the agreement under which MPS was operating.  The claims against Miller Parking Chicago, James Miller, and the Miller children and grandchildren are identical to those brought by the bankruptcy trustee in the parallel action.

Ackerman timely filed a motion to remand the case to the Oakland County circuit court, followed by an amended motion to remand.

## II.

The defendants removed the present case to this Court under 28 U.S.C. § 1334(b), which states:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11.

(Emphasis added). Ackerman's argument boils down to the idea that the present action has no legal relation to the bankruptcy case simply because Ackerman did not name Bruce Miller or Miller Parking Detroit as parties. He says that none of the claims are based on provisions of the bankruptcy code, and thus none "arise under" Title 11. He argues that the case does not "arise in" the bankruptcy action, because all of the claims asserted could exist in a lawsuit separate from any action for bankruptcy, and none are administrative proceedings that depend on the context of a bankruptcy proceeding in order to survive. He also argues that the case is not "related to" a bankruptcy action under the rule of *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1985), because he seeks recovery only from non-debtor parties, and because "common issues of fact" alone do not suffice to support "related to" jurisdiction. The Court disagrees.

The Court has original jurisdiction under the Bankruptcy Code over all of Ackerman's claims against Miller Parking Chicago and its shareholders, because all of those claims "relate to" the bankruptcy of Miller Parking Detroit, and because any judgment against the defendants would impact upon the handling and administration of the bankruptcy estate.

-5-

In bankruptcy matters, the district court's jurisdiction over a case involving nondebtors is determined solely by 28 U.S.C. § 1334(b). *In re Wolverine Radio Co.*, 930 F.2d 1132, 1140 (6th Cir. 1991). "For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between . . . proceedings 'arising under,' 'arising in,' and 'related to' a case under title 11 . . . . [I]t is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Wolverine Radio*, 930 F.2d at 1142.

The Sixth Circuit has "adopted an expansive definition of a related proceeding under section 1334(b)," first set forth by the Third Circuit in *In re Pacor, Inc.*:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 1142 (quoting *Pacor*, 743 F.2d 984, 994 (3d Cir. 1984)). Even where a claim is not "property of" the bankruptcy estate, a case based on that claim may still be "related to" the bankruptcy, where the trustee and another claimant both seek to recover "the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy." *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).

Contrary to Ackerman's suggestions that the two cases involve only "common issues of fact," Ackerman seeks to recover the exact same assets of Miller Parking Detroit that the trustee also seeks in his action. If Ackerman succeeds, then he would do exactly what the bankruptcy code prohibits: subverting the equitable distribution of the bankrupt's assets among all of its creditors. "To allow a creditor of the bankrupt to pursue his remedy against third parties on a fraudulent

-6-

transfer theory would undermine the Bankruptcy Code policy of equitable distribution by allowing the creditor 'to push its way to the front of the line of creditors.' " *N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 888 (6th Cir. 1989). Any recovery by Ackerman would reduce the assets available to the estate and would interfere with the orderly distribution of assets to all creditors, which would defeat the purpose of the bankruptcy action. If the trustee succeeds, he will recover those same assets, but for the benefit all of the creditors of Miller Parking Detroit.

In fact, Ackerman's claim to those assets likely is barred by the bankruptcy filing. "As a result of the filing of the corporate bankruptcy case[], [a judgment creditor] no longer has standing to pursue the recovery of the value of corporate assets for his sole benefit. A single creditor may not maintain an action on its own behalf if that creditor shares an injury common to all creditors and has been injured only in an incidental manner." *In re O'Donnell*, 326 B.R. 901, at *4 (B.A.P. 6th Cir. May 19, 2005) (unpublished table decision). Ackerman's only alleged injury is that assets of Miller Parking Detroit were wrongly taken and given to Miller Parking Chicago, and that injury decreased the value of the estate available to all creditors, not just Ackerman. Ackerman has shown nothing to suggest that he suffered anything more than the injury common to all creditors.

Ackerman wants to pursue a fraudulent transfer claim that only the trustee has the right to bring, and allowing his claim to continue would disrupt the bankruptcy process. Ackerman cites no relevant authority holding that the Court lacks jurisdiction over his claims or that he has any right to pursue his claims outside the context of the bankruptcy proceeding. Ackerman's arguments to the contrary are not supported by the facts he himself has pleaded.

Initially, Ackerman argues that the removing defendants "confuse" the identities of the Detroit and Chicago companies and that it was Miller Parking Chicago, not Miller Parking Detroit,

that carried out the fraudulent transfers.  It is true that Miller Parking Chicago transferred its assets to its shareholders, but there also must have been an asset transfer by Miller Detroit to Miller Chicago for any of the fraudulent transfer claims to make sense.  Neither Ackerman nor the trustee has named Miller Parking Detroit or its owner Bruce Miller as a defendant in this case.  Miller Parking Chicago, which both Ackerman and the trustee have sued, is not bankrupt and owes no debt to Ackerman, and Ackerman holds no judgment against it.  Ackerman never had any business relationship with the Chicago company, and neither company owned any part of the other.  None of the shareholders in Miller Parking Chicago owned any part of the Detroit company.  To recover, both Ackerman and the trustee must show a link between Miller Detroit and Miller Chicago through which the former's assets were transferred to the latter.

Ackerman also relies on several Michigan state court cases that he claims bar the trustee's suit, but which in fact have no bearing on his case or the case of the trustee.  Those cases essentially prohibit an entity's legal successor — e.g. a company's bankruptcy trustee — from piercing its own corporate veil.  *See RDM Holdings, LTD v. Continental Plastics Co.*, 281 Mich. App. 678, 704-05, 762 N.W.2d 529, 545-46 (2008).  But although Michigan law does provide that a bankruptcy trustee cannot sue the debtor corporation on an *alter ego* theory, neither Ackerman nor the trustee have sued any debtor or any shareholder of a debtor or bankrupt company.  Neither have named Miller Parking Detroit or its owner Bruce Miller as a defendant.

Because Ackerman has only sued Miller Parking Chicago and its shareholders, not Miller Parking Detroit, the present action does not involve any claim that would require piercing the veil of the bankrupt Detroit company.  As the court explained in the principal case that Ackerman cites, *Woodridge Hills Association v. Williams*:

-8-

> *RDM Holdings* makes abundantly clear that a debtor corporation's claim predicated on the theory that a corporate veil should be pierced under Michigan law cannot be sustained in a Chapter 7 bankruptcy case *against the debtor corporation's shareholder*. This is because Michigan law only allows application of an alter-ego or piercing-the-corporate-veil theory when pursued by a third party, e.g., creditors, and *the theories are not employed to permit a company to pierce its own veil in order to sue its own shareholders*. In other words, the bankruptcy trustee, standing in the shoes of [the debtor company], could not sue [the debtor company's shareholder] under an alter-ego or piercing-the-corporate-veil theory.

*Woodridge Hills*, No. 300193, 2011 WL 6378813, at *6 (Mich. Ct. App. Dec. 20, 2011) (emphasis added).

Ackerman, just like the trustee, seeks to pierce the veil not of his debtor, Miller Parking Detroit, but of a separate, third-party corporation, Miller Parking Chicago, which he alleges wrongly received and then distributed the assets of the debtor. The *alter ego* claims against Miller Parking Chicago are only ancillary to the central claim that when the Chicago company made a facially proper and reasonable distribution of its assets, it was not in fact distributing its own assets but those of the debtor, Miller Parking Detroit, that had been fraudulently transferred to it. No authority prevents the trustee, standing in the shoes of a debtor company, from seeking to pierce the veil of a completely separate corporation and recover for the benefit of the debtor's estate and its creditors assets that the trustee maintains were given away by the debtor and then distributed to the other company's shareholders.

In all events, the claims against Miller Parking Chicago and its shareholders "relate to" the bankruptcy, and therefore the complaint falls within the purview of 28 U.S.C. § 1334(b). Therefore, the Court has subject matter jurisdiction over this dispute.

-9-

But Ackerman also contends that abstention rules prohibit the Court from proceeding.  He points to 28 U.S.C. § 1334(c), which discusses mandatory and permissive abstention.  That statute reads:

> (1) . . . [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(1)-(2).

Section 1 of the statute permits abstention, while section 2 mandates it.  Section 2 applies only to cases that are "related to . . . but not arising" in or under Title 11.  In order for mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding. *In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996).  The defendants argue that the present lawsuit is a core proceeding because it is a proceeding to set aside a fraudulent transfer of property belonging to the Miller Parking Detroit bankruptcy estate.  The Court agrees.

According to 28 U.S.C. § 157(b), "[c]ore proceedings include . . . matters concerning the administration of the estate; . . . orders to turn over property of the estate; . . . [and] proceedings to determine, avoid, or recover fraudulent conveyances.   28 U.S.C. § 157(b)(2)(A), (E), (H).  An action on state law claims is a core proceeding where it "arises from the efforts of officers of the

-10-

[bankruptcy] estate to administer the estate and collect its assets and therefore impacts the handling and administration of the estate." *In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006). The claims against Miller Parking Chicago and its shareholders are solely designed to recover assets which both Ackerman and the trustee contend were the rightful property of Miller Parking Detroit and which therefore now belong to the bankruptcy estate and ought to be available to satisfy the claims of its creditors, including judgment creditor Ackerman. Mandatory abstention does not apply.

In advocating for permissive abstention, Ackerman contends that litigating the claims in state court would not interfere with the administration of the bankruptcy estate, and any relation of the present case with the trustee's action would be "marginal at best." The Court cannot accept that view of the two lawsuits. Although it may be true that Ackerman's claims in Counts XII through XIV against James Miller and MPS, for conversion, trespass, and injunctive relief relating to operation of the Lafayette Street lot may not affect the administration of the bankruptcy estate, the main thrust of the complaint in this case is based on the alleged "unity of interest" between Bruce and James Miller and their respective companies, which allowed them to place the assets of Miller Parking Detroit beyond the reach of its creditors. Those claims impact the purposes and goals of Title 11. Federal courts ought not abstain from hearing such claims.

### III.

The Court concludes that it has subject matter jurisdiction over the claims set out in the complaint, and that jurisdiction is not curtailed by either mandatory or permissive abstention.

Accordingly, it is **ORDERED** that the plaintiffs' motion to remand [dkt. #9] is **DENIED**.

It is further **ORDERED** that the motion hearing scheduled for November 14, 2012 is

**CANCELLED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   November 6, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 6, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL